FORDHAM, JUDGE:
Claimant trustees brought this action for damages to their church building and contents in Saulsville, Wyoming County. Claimant trustees for the Saulsville Baptist Church (herein after referred to as claimant) allege damages occurred to their church as a result of respondent’s failure to design and construct an adequate culvert system under Route 97. Route 97 is a public highway in Wyoming County and is maintained by the respondent. The Court is of the opinion to make an award in this claim for the reasons more fully stated below.
The Saulsville Baptist Church is located on property adjacent to Route 97 and Route 97/1. The Marsh Fork and Bear Hole Fork flow near this property with the Marsh Fork being adjacent to the east side of the property. The Marsh Fork flows through a culvert beneath Route 97.
The incident giving rise to this claim occurred on July 8,2001. A heavy rainfall occurred on that date which resulted in the flooding of claimant’s building located on its property. Karen Bailey testified that the church was originally built in 1947. She stated that Route 97 in its present configuration was constructed in 1968 coincident with the opening of Twin Falls State Park. Prior to the road being constructed, the property around the church was used as hay fields and meadows and that neither the claimant’s property nor the church building itself had flooded. Mrs. Bailey testified that the structure has flooded periodically since Route 97 was constructed in its present configuration. She stated that the church was flooded on May 1, 1975, September 8, 1989, May 18, 2001, and July 8, 2001, the date of the incident involved in this claim. Mrs. Bailey stated that on July 8,2001, she was in the church in Sunday School when the water began to back up at the culvert. A truck was used to get the older women and the children out of the building while several people remained inside the church trying to move personal property to higher areas to avoid the flood waters. Mrs. Bailey testified that within an hour the water was waist deep inside the building. She also stated that the culvert did not have to be full for the church to flood, and that when the water was waist deep inside the church, the culvert was not full. She stated that there was eventually six feet of water in the building and that the water completely surrounded the church. After the flood there was approximately six inches of mud left in the building. Mrs. Bailey testified that after the flood, the use of the building was limited and that only the pews were saved. She also stated that the heating and cooling duct work had to be replaced and the foundation of the building was damaged. Mrs. Bailey stated that claimant has received $80,000.00 from its insurance company for the flood damages to the church.
John Bailey, Deacon at Saulsville Baptist Church, testified that prior to the incident involved in this claim there were some trees and brush located in Marsh Fork in front of the culvert. Mr. Bailey stated that he first contacted respondent regarding problems with flooding in the church approximately 20 years ago. He again met with a representative of respondent in the late 1990s. Mr. Bailey testified that during this time period, engineers for respondent came out to inspect the area and that he walked around *82 the area with them describing the problems the church was having and showing the engineers where the problems were. Mr. Bailey stated that the culvert did not have to be full for the water to back up and flood the church. After these talks, Mr. Bailey stated that plans were drawn up by respondent for a culvert to be installed for both Bearhole Fork and Marsh Fork and that these creeks would then meet up on the opposite side of the highway from the church. Mr. Bailey testified that Saulsville Baptist Church had to spend $1,000.00 to tear down and remove the church building that was damaged in the flooding involved in this incident. The Church also paid $21,000.00 to fill with dirt the area where the new church is now located. Mr. Bailey stated that the total damages claimant suffered was $183,262.08.
David McDorman, a registered professional engineer, testified on behalf of the claimant. Mr. McDorman testified that the West Virginia State Road Commission Drainage Manual, adopted in 1963, gives direction for designing drainage structures. According to the manual, feeder and state and local routes, such as Route 97, must be designed to carry a twenty-five year flood event. Mr. McDorman stated that according to the original designs, the average daily traffic along Route 97 was 240 and that any road with an average daily traffic count over 200 is supposed to be designed for a twenty-five year flood.
Mr. McDorman conducted a hydraulic study of the area surrounding the church, taking into account average rainfalls of different size storm events, as well as looking at the ability of the culvert to carry the expected water flows from the different storm events. He testified that the total acreage draining into this culvert under Route 97 is 1,717 acres. Mr. McDorman stated that the culvert, an 84 inch pipe, was capable of carrying 300 cubic feet of water per second. He testified that a two-year storm would create 460 cubic feet of water per second, a ten year storm event would have 1,393 cubic feet of water per second and that a twenty-five year storm would have 2,028 cubic feet of water per second. In Mr. McDorman’s opinion, the culvert was too small when it was constructed and is the primary cause of the flooding that occurred on claimant’s property in 2001. Mr. McDorman further stated that based upon the size of Marsh Fork, if the culvert were to carry the same amount of water as the stream channel, the water level has to be approximately four feet above the stream channel. The bottom of the culvert, however, is at the same elevation as the creek bed, and Mr. McDorman testified that because of this, the creek is going to overflow its banks before the culvert is filled to capacity.
Mr. McDorman also analyzed the plans that respondent had prepared, but never implemented, to separate the flow of the two creeks into two separate culverts. According to his calculations, the design would still be inadequate to carry a twenty-five year storm event as they could only carry 600 cubic feet of water per second. Mr. McDorman testified that in his expert opinion, the best solution for correcting the flooding problem would be to construct a bridge over the stream crossing or a channel crossing. He stated that in a channel crossing, a rectangular box culvert made from concrete is used, with the bottom of the box culvert being at the same elevation as the stream channel, but it could be made as wide as necessary to provide for adequate drainage. The position of the claimant, based upon the testimony and evidence, is that the respondent failed to maintain a culvert located adjacent to its property and to Route 97. Claimant also alleges that the design of the culvert is inadequate.
The position of the respondent is that it was not responsible for the flooding that occurred to claimant’s property on July 8,2001, in that there was a significant rainfall in southern West Virginia, overwhelming its drainage systems and causing flooding in *83 several counties.
James Stewart, Supervisor for Respondent in Wyoming County, testified that the culvert under Route 97 is an 84 inch structural engineered culvert with concrete sides and bottom and a steel structure on top that had been in place since the 1960s. Mr. Stewart stated that the road was built in 1968 and that when it was constructed, the road made the church lower than the elevation of the road. He stated that there had been meetings about improving the intersection with John Bailey around 1999 and that Mr. Bailey complained that flooding was a problem at that time. Mr. Stewart testified that a redesign of the intersection was prepared in 2000 which included a redesign of the drainage. This redesign called for two 84 inch culverts to be installed, one each for Bearhole Fork and Marsh Fork, to replace the one culvert under Route 97. He stated that the proposed redesign would have put the drainage of both creeks on the other side of Route 97 from Saulsville Baptist Church. Mr. StewarttestifiedthatonJuly 8,2001, there was significant flooding throughout Wyoming County. He stated that approximately 3,500 homes were destroyed throughout Wyoming County. Mr. Stewart testified that eleven inches of rain fell at Twin Falls State Park in 24 hours. He also stated that there were approximately twelve million dollars ($12,000,000.00) in damages to the roads within Wyoming County. He stated that at claimant’s property, the water was across Route 97 and nearly up to the top of the front door to the church. He further stated that after the water receded, there was no debris inside the culvert. Mr. Stewart further testified that he found no maintenance records relating to the culvert under Route 97 in front of claimant’s property in 2001.
David Cox, Assistant Supervisor for respondent in Wyoming County, testified that he did not recall any maintenance work being done on the culvert under Route 97 in front of claimant’s property. He stated that on average eight to eleven inches of rain fell on July 8, 2001, throughout Wyoming County. He further stated that there were no drains in Wyoming County that were adequate to deal with that amount of water. Finally, Mr. Cox testified that if the proposed design change had been implemented, there would have been double the amount of drainage available in the area.
To hold respondent liable for damages caused by inadequate drainage, claimant must prove by a preponderance of the evidence that respondent had actual or constructive notice of the existence of the inadequate drainage system and a reasonable amount of time to correct it. Ashworth v. Division of Highways, 19 Ct. Cl. 189 (1993); Orsburn v. Division of Highways, 18 Ct. Cl. 125 (1991).
The Court, having reviewed the all of the facts and evidence including all exhibits, briefs of the parties, the transcript in this claim as well as the post-hearing depositions, concludes that the flood which occurred on July 8, 2001, and which destroyed the Saulsville Baptist Church was the result of the inadequate drainage system beneath Route 97 and that respondent had actual notice that there was a potential for a flood in the area as the result of an unusual rainfall. Thus, the Court finds respondent liable for the damages to the church property, the building, the value of the contents destroyed in the flood, and the costs for preparing the land for a new building to be erected on the same property, but at an elevation designed to protect the church building from future flooding.
One of the difficulties for the Court in determining damages in this claim is that the deed conveying the property to the Saulsville Baptist Church provided that the “property automatically reverts back” to the grantors or his/her legal heirs “without any process at law” if the “property ceases to be used ...for regular church services for a period of twelve months” which provision then renders the difference in fair market value *84 as a useless method of calculating the damages. Thus, any appraisal based upon fair market value is inappropriate for the facts in this particular claim.
It must also be noted in any discussion of the damages that claimant received a total of $80,000.00 from FEMA and its flood insurance based upon appraisals performed by FEMA adjusters. This amount accounts for damages to the real estate, church building, contents, removal of debris, and for the fill and grading of the new site. The actual cost of the fill and grading of the new site for the rebuilt church is in the amount of $37,043.27. The compensation for removal of debris was calculated at $1,000.00 in both of the appraisals. The claimant also lost the contents of the former church building, other than the pews.
An appraisal was performed by Bane E. Sarrett and Jimmy L. Parker, Appraisers, at the request of this Court subsequent to the hearing of the claim. The appraisers are consultants for the Court. One of the approaches that they used in their appraisal was “The Cost Approach To Value” which resulted in the value of the loss to claimant as being the amount of $161,500.00. The Cost Approach is based upon the replacement of the subject and a deduction for Physical Deterioration, Functional Obsolescence, and External Depreciation. The Court is of the opinion that this is the better approach to determine the actual loss to the claimant in this claim. However, as to this appraisal, the Court will not take into consideration the land value of $6,700.00 or the site improvement calculation of $5,000.00. Claimant continues to have use of the land so the land value of $6,700.00 will not be included in any award. As to the site improvement issue, the Court notes that claimant expended more than $37,000.00 for fill and grading of the new site. While the Court is constrained from making an award for the total amount expended by claimant for the cost of these improvements to the site, it recognizes that respondent benefits from relocating the church building farther from Route 97 andraisingthe structure approximately twenty-one feet. Accordingly, the Court makes an award of $12,000.00 for this benefit to respondent thus alleviating the possibility of future flooding of the subject church building from the culvert at issue in this claim. The Court concludes the total loss to claimant is the amount of $161,800.00 from which there is a deduction of $80,000.00 (insurance proceeds mentioned herein above) for a loss to the claimant of $81,800.00.
Accordingly, the Court makes an award to claimant in the amount of $81,800.00.
Award of $81,800.00.
The Honorable Franklin L. Gritt Jr., former Presiding Judge of the Court of Claims, took part in the hearing of this claim and in the decision upon the issue of liability only. He did not participate in the decision upon the issue of damages.
The Honorable John G. Hackney Jr., Judge of the Court of Claims, did not take part in the hearing or decision of this claim.